THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| VARN CHANDOLA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SEATTLE HOUSING AUTHORITY, a municipal corporation; and JAMES FEARN, an individual,<br><br>　　　　　　Defendants. | No. 13-cv-00557 RSM<br><br>PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS<br><br><u>Noted on Motion Calendar</u>:<br>Friday, June 27, 2014 |

Plaintiff respectfully asks the Court to compel Defendant Seattle Housing Authority to answer questions it refused to answer during a Rule 30(b)(6) deposition on attorney-client privilege and work product grounds. This is the second motion Plaintiff has been forced to bring because of Defendants' unreasonable privilege claims. Defendant James Fearn appeared for his deposition as the Rule 30(b)(6) designee, but defense counsel repeatedly instructed him not to answer questions about subjects central to this lawsuit, and that relate to Mr. Fearn's role as manager and decision-maker of SHA, <u>not</u> to his role as a lawyer giving advice to any client.

Plaintiff's counsel certifies that he conferred with defense counsel during the deposition but the parties were unable to resolve this dispute. Declaration of Jesse Wing ¶1.

**I.　　Background Facts**

This Court has summarized the facts of this case as follows:

This case arises from the termination of Plaintiff, Varn Chandola, from employment at Defendant agency, Seattle Housing Authority (SHA). From 2009
<br>
PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 1
No. 13-cv-00557-RSM

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604　Fax 206.343.3961

10220.01 hf116701

until late 2010, Plaintiff was a Hearing Officer for Defendant Agency, presiding over hearings designed to determine if clients of the Section 8 housing program (voucherholders) should be terminated from the program. Defendant Fearn was in charge of assigning cases to Hearing Officers and paying them for their work performed for SHA.

Dkt. 23 at 1-2.

In June of 2010, Plaintiff presided over a termination hearing the purpose of which was to review client Jacquelyn Nichols for potential termination from the program. Plaintiff found in favor of Ms. Nichols on July 6, 2010. Subsequently, Defendant Fearn wrote to Ms. Nichols that Plaintiff's decision would be disregarded as outside the scope of his authority and that Plaintiff would be expected to revise his decision accordingly. Plaintiff refused to do so, citing ethical obligations under the Judicial Code of Washington. Defendant Fearn continued to insist that Plaintiff revise his decision while Plaintiff continued to refuse, culminating in reassignment of the case to another Hearing Officer, forfeiture of compensation by Plaintiff for his work on the case, and, unbeknownst to Plaintiff, Plaintiff's removal from the pool of Hearing Officers used by SHA.

*Id*. at 2.

## II.     Issues

As explained, "Defendant Fearn was in charge of assigning cases to Hearing Officers and paying them for their work performed for SHA" and was the decision-maker over all alleged mistreatment of Hearing Office Chandola. *Id*. Nevertheless, on grounds of attorney-client privilege and work product, defense counsel instructed SHA deponent James Fearn not to answer questions about who designated him to answer questions on behalf of SHA and about his communications with others explaining the bases for his actions challenged by Plaintiff.

**A.     Refusal to Answer About Designation for Rule 30(b)(6)**

Q   Okay. You understand that it is the Seattle Housing Authority that has been noticed to appear today and not you personally; right?
A   Yes.

Q   Okay. And so you have been designated by the Seattle Housing Authority to answer questions about the topics that are listed in this deposition; is that correct?
A   Correct.

Q   Okay. Who made the decision to designate you for this purpose?
. . .

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 2
No. 13-cv-00557-RSM

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

MS. DORRITY: Okay. I'm instructing Mr. Fearn not to answer that on the basis
of attorney-client privilege.

Rule 30(b)(6) Dep. at 16:15-17:8, Wing Dec. Ex. 1. Despite repeated attempts by Plaintiff's counsel, defense counsel refused to allow the deponent to answer this question, or to even establish the foundation of the privilege by disclosing who the "client" was and who the "attorney" was in withheld communications. *See id*. 66:15-72:7.

Q (By Mr. Wing) Mr. Fearn, somebody told you to show up here today; right?

MS. DORRITY: Well, you know, look, I'm not going to -- I'm not going to allow
him to answer these questions. You can make your record, and I'll just keep
making my objections; and if you want the Court to rule on it, I'm happy to let the
Court decide. I feel this is obviously invading my privilege with my client,
whether it's Seattle Housing Authority or Mr. Fearn. And Mr. Fearn is also the
designee today on behalf of the Housing Authority. He's separately a defendant,
but I realize he's appearing today on behalf of the Housing Authority. Either way,
these questions are improper. They call for a legal conclusion, but they're also
privileged. So I'm going to instruct him not to answer. If you want to ask a few
more questions that are the same, I will make the same objection.

*Id*. at 72:8-25; *see also id.* 73:1-18 ("If the Court wants to go after anybody, they can talk to me and certainly order me to do what the Court thinks is correct.")

**B.      Refusal to Respond to Questions about Management Decisions**

SHA's refusals continued, with its litigation counsel instructing Mr. Fearn not to respond to questions about core issues--the decision to terminate Mr. Chandola as a Hearing Officer discussed at "twice monthly staff meetings" of SHA's legal department:

Q What do you recall being the first subject of concern that was raised at those
meetings about Varn Chandola?

MS. DORRITY: I'm going to object. I guess I need to talk to my client and see if
there's issues, issues of privilege with regard to that discussion, so –

(Break 12:02 p.m. to 12:05 p.m.)     (Question read back.)

MS. DORRITY: Okay. And then I'm just going to -- Since I've consulted with
my client, I'm going to object on the basis of privilege and work product with
regard to Mr. Fearn's discussion with other members of the legal department
about their legal analysis of the decision that Mr. Chandola made.

*Id*. at 108:2-15. Despite efforts to secure deposition answers, defense counsel instructed SHA not to answer and failed to articulate a reasonable basis for the objection, and continued to instruct Mr. Fearn not to reveal the very basic foundation of identifying "lawyer" and "client":

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 3
No. 13-cv-00557-RSM

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

MR. WING: So do you claim attorney-client privilege over those communications?

MS. DORRITY: I claim both attorney-client and work product.

MR. WING: And who was the client?

MS. DORRITY: I believe in that case the client is Seattle Housing Authority, and the legal department is, you know, conducting an analysis to advise its client. So the Housing Authority is the client.

MR. WING: And **who was present** at those conversations who was the Seattle Housing Authority as opposed to a lawyer?

MS. DORRITY: I don't know that anybody -- Well, I don't know that anybody was, except that Mr. Fearn is ultimately making a decision; but the issue is it would be no different -- Either Mr. Fearn is making the decision and he's consulting with other counsel, or he's just among one of several counsel who are having privileged communication, just as I might with other attorneys in my firm.

*Id*. at 109:5-24 (emphasis added).

> Q (By Mr. Wing) Are you asserting that you were both the client and the lawyer when you were discussing Varn Chandola at the twice monthly staff meetings?
>
> MS. DORRITY: And I object. That calls for a legal conclusion. We'll make our argument to the Court, regardless of what Mr. Fearn states on the record. We've already made our argument. SHA is the client, and he --
>
> MR. WING: Are you instructing him not to --
>
> MS. DORRITY: I am instructing him not to answer, yes.

*Id*. at 110:13-24. Defense counsel then made clear it would be a waste to continue asking about SHA Rule 30(b)(6) Fearn's communications because she would instruct him not to answer:

> MR. WING: What I want to do is avoid spending a bunch of time, you know, thinking up all the questions I need to find out here. You're not going to let him answer any other questions about who is the client or who was the lawyer and who was communicating to whom in those meetings about Mr. Chandola; is that correct?
>
> MS. DORRITY: In his meetings, yes. In the legal department, that is correct.
> MR. WING: Okay.
>
> MS. DORRITY: And I understand you can bring the motion, and the Court may decide differently; and we may have to come back.
> . . .

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 4
No. 13-cv-00557-RSM

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

| | |
|---|---|
| 1 | MR. WING: And if I heard you correctly, you're also asserting work product privilege. What is the anticipated litigation that these conversations were about regarding Mr. Chandola? |
| 2 | |
| 3 | MS. DORRITY: Well, regarding -- It wasn't Mr. Chandola. It was a decision that Mr. Chandola made with regard to a participant and whether the ruling was correct. |
| 4 | |
| 5 | MR. WING: Well, I hear you testifying, but he's not said that, so -- |
| 6 | MS. DORRITY: Well, -- |
| 7 | MR. WING: I mean, you've instructed him not to answer any of my questions, but -- |
| 8 | |
| 9 | MS. DORRITY: Okay. Then I'm instructing him not to answer, and we can make the arguments in court. That's fine. |

*Id*. at 110:25-112:7. And, SHA's litigation counsel instructed Mr. Fearn not to answer questions regarding his discussions about the "Nichols case" and regarding SHA "discussing this with your staff in an staff meeting . . . about whether [they] were going to take some action regarding Mr. Chandola's decision." *Id.* 112:13-21.

The instructions not to answer continued when Mr. Fearn was asked about conversations regarding Mr. Chandola's comparators:

Q    What did Hearing Officer Kalhorn write that you disagreed with?

A    I don't remember the details of it, only that I thought she -- Well, another reason, when nothing happens -- She ultimately found in SHA's favor, and so it wasn't that we would reverse the decision or make a decision we would not be bound by it because we prevailed. But there was a long discussion in there about--

MS. DORRITY: Okay. I'm going to instruct you --

MR. FEARN: Okay. All right.

MS. DORRITY: -- not to talk about --

MR. FEARN: Okay. About --

MS. DORRITY: -- privileged communications.

MR. FEARN: Okay.
A    So but at any rate, I just -- I had some disagreements with it and some issues with it, and so I brought it up at a staff meeting to see what -- what other people -- what other people's thoughts were about it.

Q    (By Mr. Wing) Did other people agree with you?

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 5
No. 13-cv-00557-RSM

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10220.01 hf116701

| | |
|---|---|
| 1 | MS. DORRITY: I'm going to -- I'm going to instruct you not to answer that -- |
| 2 | MR. FEARN: Okay. |
| 3 | MS. DORRITY: -- on the basis of privilege. |
| 4 | MR. WING: Both forms of privilege? |
| 5 | MS. DORRITY: Yes. |
| 6 | MR. WING: That is, attorney-client and work product? |
| 7 | MS. DORRITY: Yes. We'll just use that as a shorthand, if that's okay, or I can say it each time. |
| 9 | MR. WING: I'd like you to say them both so that whichever privilege applies -- because I don't want to be unclear about what you're asserting. And is it accurate to say that if I were to ask who the client or who the lawyer is, -- |
| 10 | MS. DORRITY: Sure. |
| 12 | MR. WING: -- we would run into the same instruction, that he's not to answer? |
| 13 | MS. DORRITY: Yes. |
| 14 | MR. WING: Okay. |

*Id.* at 116:6-117:20.

After repeatedly interfering with Plaintiff's legitimate questions and attempts to learn the basis of Defendants' assertions of privilege, at the end of the deposition SHA's litigation counsel asked leading questions to bolster her assertions of privilege:

> BY MS. DORRITY:
> Q  Well, you were asked earlier who was the client in regard to this correspondence. **Who do you think the client was?**
> A  The client are the SHA staff people that are listed there.
>
> Q  Okay. And were you acting as the attorney for SHA or its general counsel when you sent this email?
> A  Whenever I give --
>
> MR. WING: Objection, leading.
> A  Whenever I give advice I act in my capacity as general counsel.
>
> Q  (By Ms. Dorrity) Okay. So -- Okay. And so there was an objection, so I guess maybe I'll restate it.
> A  Uhm-hm.
>
> Q  So when you were giving advice to SHA and SHA personnel, including legal analysis, in what capacity are you acting?
> A  As their attorney.

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 6
No. 13-cv-00557-RSM

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

*Id*. at 256:24-257:16 (emphasis added).

On re-examination, Mr. Fearn asserted that whenever he is talking to non-lawyers at SHA he is speaking as a lawyer, and whenever he is speaking with lawyers at SHA he is "fashioning the department's legal position":

> BY MR. WING:
> Q   Mr. Fearn, if I understood the communication you just had with your counsel on the record, --
> A   Yes.
>
> Q   -- we're to infer that whenever you're communicating with people who aren't lawyers, they're the client and you're the lawyer?
> MS. DORRITY:  Object to the form.
>
> Q   (By Mr. Wing) Is that right?
> A   Yes.
>
> Q   And whenever you're not communicating with non-lawyers, what are you?
> MS. DORRITY:  Object to the form.
> A   What do you mean, when I'm not communicating?
>
> Q   (By Mr. Wing) Well, you communicate just with Ms. Brosell in some of these emails.
> A   If it's work related, then we are determining legal department legal issues. I mean, legal issues in the legal department.
>
> Q   And who is the client?
> MS. DORRITY:  Object to the form, argumentative.
> A   Well, SHA is still the client. We are the lawyer, and we are forming a legal --
>
> Q   (By Mr. Wing) The client is just not part of --
> MS. DORRITY:  Wait, let him finish his answer.
> A   And we are fashioning the department's legal position.
>
> Q   (By Mr. Wing) And the client just isn't part of the communication?
> A   Right.
>
> Q   Because you're expressing these kind of opinions and your lawyer is not the one who is communicating them, I would like you to explain how that is an attorney-client communication.
>
> MS. DORRITY:  I'm going to object, calls for a legal conclusion.
> A   Well, I don't understand your question.
>
> Q   (By Mr. Wing) Well, it's kind of self-evident in the definition of attorney client communication --
> A   Yes.

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 7
No. 13-cv-00557-RSM

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

| | |
|---|---|
| 1 | Q -- that a lawyer needs to be communicating with a client; and if they're not communicating with each other, there may be another privilege that applies, but how is that protected by the attorney-client privilege? |
| 2 | |
| 3 | MS. DORRITY: I'm going to object, argumentative, -- |
| 4 | MR. FEARN: Okay. |
| 5 | MS. DORRITY: -- and also calls for a legal conclusion. |
| 6 | A So are you saying when I talked to Linda Brosell, how is that protected by the attorney-client privilege? |
| 7 | Q (By Mr. Wing) Yes. |
|   | A Okay. I'll let my counsel answer that question. |
| 8 | |
| 9 | **Q Well, if I understand you correctly, there's no client present when you're communicating with Ms. Brosell; is that right?** |
|   | **A That is absolutely true.** |

*Id*. at 258:3-260:11 (emphasis added).

### III. Argument

The answers to the questions posed are not protected. They are the opinions and communications of *the* decision-maker supervisor of the Plaintiff, acting not as attorney but as an administrator, and the name of the person who designated him as SHA's Rule 30(b)(6) deponent to answer questions on its behalf is not privileged. Defendants' repeated refusal to identify who is the client and who is the lawyer in communications reveals bad faith interference with Plaintiff's right to basic information to evaluate the assertion of privilege, and the communications were not protected because they were to facilitate illegal retaliation. SHA cannot legitimately claim Mr. Fearn was providing legal advice about his own decision to remove Mr. Chandola from the "blind" rotation. And Plaintiff has shown substantial need for and inability to obtain the information from any other source waiving any work product protection.

Plaintiff requests that the Court order Defendant SHA and its designee, Defendant James Fearn, to answer all questions posed to him at the Rule 30(b)(6) deposition and the lines of inquiry that his lawyer instructed him not to answer. The defense should likewise pay the costs (sitting fee and transcription) of the follow-up deposition it's refusals to answer necessitated.

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 8
No. 13-cv-00557-RSM

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10220.01 hf116701

## A. Defendants' Burden to Establish Attorney-Client Privilege

A party asserting privilege must prove: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (citations omitted). In short, "the communication must be between the client and lawyer *for the purpose of obtaining legal advice*." *Id.* (citation omitted, emphasis added). "The burden is on the party asserting the privilege to establish all the elements of the privilege." *Id.* (citation omitted). Defendants cannot meet their heavy burden.

## B. No Legal Advice Was Sought by a Client, and Defendant James Fearn was *the* decision-maker and moving force behind the Alleged Illegal Retaliation, So His Communications Were Never Privileged

Mr. Fearn supervised all of the hearing officers, including Mr. Chandola, and made the decisions: (1) that SHA would not be bound by Mr. Chandola's written opinions; (2) to instruct Mr. Chandola to rewrite his opinion to favor SHA; (3) to withhold payment from Mr. Chandola for presiding over the *Nichols* hearing; and (4) to remove Mr. Chandola from the blind rotation for assignment of cases—all allegedly in violation of SHA's contract with Mr. Chandola.

Mr. Fearn was acting not as lawyer, but as administrator. His motivation, decisions, and rationale, are *the* subject of this case. It is undisputed he was the moving force behind each act Plaintiff alleges violated the Constitution. Defendants try to portray Mr. Fearn as a lawyer giving legal advice, but he was not advising anyone. He was *the* decision-maker and *the* actor in this case. Since he was the client, he cannot advise himself or someone else about his own decisions for SHA. Accordingly, his communications at issue were not privileged.

When a lawyer acts as administrator his communications are not protected by the attorney-client privilege. "That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged. The privilege applies only when legal advice is sought 'from a professional legal advisor *in his capacity as such*.'" *United States v. Chen*, 99

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 9
No. 13-cv-00557-RSM

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

F.3d 1495, 1501 (9th Cir. 1996) (quoting 8 Wigmore § 2292 at 554 (emphasis added)); *see also, e.g.*, *Hardy v. New York News*, 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987) (holding "the business aspects of the decision are not protected simply because legal considerations are also involved."); *Henson v. Wyeth Labs, Inc.*, 118 F.R.D. 584, 587 (W.D. Va. 1987) (holding communication about business advice was not privileged).

Mr. Fearn was an administrative representative of SHA when he harmed Mr. Chandola. SHA cannot assign its in-house lawyer to conduct allegedly retaliatory misdeeds and then conceal his motivations. Indeed, "An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977).

**C.  As the Decision-maker, SHA Has Put Any Opinions or Advice that Mr. Fearn Gave "At Issue," Waiving Any Privilege, and the Court should Prevent SHA from Using That Advice as a Sword and a Shield**

> The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable ... For this reason we have admonished that the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege[.]

*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996).

A bedrock principle of privilege is that "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991)). "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.*

This is a retaliation case so, as in *Bilzerian* and *Chevron Corp.*, Mr. Fearn's intent in taking actions against Mr. Chandola is at issue. And Defendants have even affirmatively injected

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 10
No. 13-cv-00557-RSM

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10220.01 hf116701

1  his communications into controversy by contending as their Fourth Affirmative Defense that

2  "SHA's actions were justified and not motivated by protected speech." *See* Dkt. 25 at 12-13.

3  In his response to Request for Admission No. 2, Mr. Fearn stated that he decided not

4  assign more hearings to Mr. Chandola "because hearing officer Chandola failed to complete

5  work on the Nichols matter," which "constituted a failure to perform the service requested under

6  the contract…." Dkt. 38-7. And in response to Request for Admission No. 3, Mr. Fearn asserted

7  that "Hearing officer Chandola's refusal to issue a new decision compelled SHA to redo the

8  entire hearing and pay another hearing officer for the work he had already done." *Id.*

9  But in response to Request for Admission No. 4, Mr. Fearn "denies plaintiff's characterization

10 that he was removed 'because he refused to issue a new hearing decision at your direction.'" *Id.*

11 In other words, Mr. Fearn is characterizing his motivations for his actions against Mr.

12 Chandola as legitimate while simultaneously concealing the substance of his contemporaneous

13 communications revealing his state of mind and explaining his views about Mr. Chandola's

14 opinions and what to glean from them. SHA and Mr. Fearn have placed Mr. Fearn's

15 communications "at issue," using his advice as a sword by asserting his decisions and actions

16 were the product of—and justified by—his mental impressions and his analysis of the law.

17 Simultaneously, SHA is using Mr. Fearn's purported "advice" and communications as a

18 shield by blocking inquiry into the details. Under these circumstances, the Ninth Circuit has

19 declared the privilege unavailable, or waived. *See Aloe Vera of America, Inc. v. United States*,

20 2003 U.S. District LEXIS 18317 (Ariz. Sept. 23, 2003), *aff'd*, 376 F.3d 960 (9th Cir. 2004) (U.S.

21 government entitled to attorney-client communications about what plaintiff knew when, to

22 support government's statute of limitations defense). Mr. Chandola is entitled to discover the

23 basis for Mr. Fearn's decisions and actions. What did Mr. Fearn say? What was his analysis of

24 the law? Was it reasonable?

25 **D.     Advice to Commit Illegal Retaliation is Not Privileged**

26 Plaintiff incorporates by reference arguments made under the "crime fraud" exception in

27 his previous motion. *See* Dkt. 37-0. To the extent any of the communications can be construed

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 11
No. 13-cv-00557-RSM

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701

as "legal advice," they relate to committing illegal retaliation against Mr. Chandola so are not privileged. At trial, Mr. Chandola will need to establish his claim of retaliation on the merits but he has shown sufficient basis to conclude, on its face, that Mr. Fearn's actions appear retaliatory and lack a legitimate rationale. SHA's claim of privilege over any alleged advice he gave fails.

### E. Work Product Doctrine

"The primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (citation omitted). Since no communication at issue shows SHA preparing for litigation with Plaintiff, application of the doctrine would not serve this primary purpose.

Further, even if the communications can be characterized as work product, Plaintiff has substantial need of them and cannot obtain the same evidence elsewhere, so Defendants should be ordered to produce them, unredacted. As explained, this case is all about Mr. Fearn's motivations, his views of Mr. Chandola and his rulings, and why Mr. Fearn took the actions that he took. That is what the concealed contemporaneous communications seem to be about.

If SHA is not required to reveal these communications, then Mr. Fearn can provide inaccurate answers at deposition with impunity knowing he will not be subject to prior written inconsistent statements. *See Doubleday v. Ruh*, 149 F.R.D. 601, 608 (E.D. Cal. 1993).

### IV. Conclusion

Plaintiff respectfully asks that the Court please order Defendant SHA and its designed deponent Defendant James Fearn to answer the questions posed to him at the deposition of SHA, and all lines of inquiry that defense counsel instructed him not to answer, to pay the cost of additional deposition, and the fees and costs incurred by Plaintiff in bringing this motion.

DATED this 12th day of June, 2014.

MacDONALD HOAGUE & BAYLESS


By: *s/ Jesse Wing*
Jesse Wing, WSBA # 27751
Attorneys for Plaintiff

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 12
No. 13-cv-00557-RSM

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10220.01 hf116701

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Counsel for Defendants SHA & Fearn

Kristen Dorrity
Andrews Skinner PS
645 Elliott Avenue W, Suite 350
Seattle, WA 98119
Phone: 206/223-9248
Fax: 206/623-9050
Email: kristen.dorrity@andrews-skinner.com;
sally.gannett@andrews-skinner.com;
kristina.chin@andrews-skinner.com

DATED this 12th day of June, 2014, at Seattle, Washington.

*s/ Estela Acosta*
Estela Acosta, Legal Assistant

PLAINTIFF'S MOTION TO COMPEL DEPOSITION ANSWERS - 13
No. 13-cv-00557-RSM

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10220.01 hf116701