UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VARN CHANDOLA, | CASE NO. C13-557 RSM |
| Plaintiff, | ORDER ON MOTIONS TO COMPEL |
| v. | |
| SEATTLE HOUSING AUTHORITY, a municipal corporation, and JAMES FEARN, an individual, | |
| Defendants. | |

This matter comes before the Court upon Motion to Compel Discovery (Dkt. # 37) and Motion to Compel Deposition Answers (Dkt. # 51) by Plaintiff as well as Motion to Compel Documents Pursuant To Subpoena (Dkt. # 66) by Defendants. Having considered the parties' motions and materials filed in support and opposition thereto, the balance of the record, and the applicable law, the Court grants in part Plaintiff's Motion to Compel Deposition Answers and defers ruling on the remaining discovery motions pending *in camera* review.

**BACKGROUND**

The facts of this case are set out in detail in the Court's prior Order on Defendants' motion to dismiss. Dkt. # 23. As relevant to the instant motions, Plaintiff, Varn Chandola, was employed as a Hearing Officer for Defendant Seattle Housing Authority ("SHA"), in which role he presided over hearings to determine if clients of the Section 8 Housing Choice Voucher Program ("voucherholders") would be terminated from the program. Defendant James Fearn, SHA General Counsel, was in charge of assigning cases to and supervising Hearing Officers and for paying them for work performed. In June of 2010, Plaintiff presided over a termination hearing to review voucherholder Jacquelyn Nichols for potential termination from the program. After Plaintiff found in favor of Ms. Nichols, Defendant Fearn wrote to Ms. Nichols that Plaintiff's decision would be disregarded as outside the scope of his authority and that Plaintiff would be expected to revise his decision accordingly. Plaintiff's refusal to rewrite his decision culminated in the reassignment of the Nichols case to another Hearing Officer, forfeiture of compensation for work Plaintiff performed on the case, and Plaintiff's removal from the pool of Hearing Officers used by SHA. Plaintiff filed this case in King County Superior Court on February 21, 2013, alleging constitutional and state law violations, and Defendants removed it to this Court on the basis of its federal question jurisdiction.

Presently before the Court are three motions seeking to compel production of documents and testimony withheld on the basis of attorney-client privilege and work product. Plaintiff's first motion to compel concerns 52 documents created between February 2010 and December 2012, which contain communications from Mr. Fearn and his deputy, Linda Brosell and were either withheld or redacted by Defendants in response to Plaintiff's Interrogatories and Requests for Production. Dkt. # 37. Plaintiff's second motion seeks to compel SHA to answer questions that

1    Mr. Fearn, as SHA's Rule 30(b)(6) designee, was instructed not to answer on attorney-client

2    privilege and work product grounds. Dkt. # 51. Defendants, in turn, move to compel production

3    of documents from Northwest Justice Project attorney, Eric Dunn, pursuant to third-party

4    subpoena served by Defendants. Dkt. # 66. Mr. Dunn objected to the production of documents

5    containing communications between him and Plaintiff's attorneys in this case, which he and

6    Plaintiff contend are privileged.  The Court considers each motion in turn.

7

8                                              **DISCUSSION**

9        **A. Legal Standard**

10            While the scope of permissible discovery in a civil action is broad, it is not without limit.

11    "Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's

12    claim or defense."  Fed. R. Civ. P. 26(b)(1) (emphasis added); *Surfvivor Media, Inc. v. Survivor*

13    *Prods.,* 406 F.3d 625, 635 (9th Cir. 2005). In federal question cases, such as the instant matter,

14    the court looks to federal law to determine whether a privilege applies. *Kerr v. United States*

15    *District Court of Northern* California, 511 F.2d 192, 197 (9th Cir. 1975). Among the common

16    law privileges recognized under Federal Rule of Evidence 501, "[t]he attorney-client privilege is

17    the oldest and arguably most fundamental." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078,

18    1090 (9th Cir. 2007), abrogated on other grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S.

19    100 (2009).  The attorney-client privilege protects confidential disclosures between attorneys and

20    clients made for the purpose of giving and receiving legal advice. *U.S. v. Ruehle*, 583 F.3d 600,

21    607 (9th Cir. 2009).

22            The party asserting the privilege bears the burden to prove each of the following eight

23    elements:

24

> "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from the disclosure by the client or by the legal adviser (8) unless the protection be waived."

*U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (internal citation omitted); *see United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that the party asserting privilege "must make a *prima facie* showing" that the privilege applies) (citing *In re Grand Jury Invest.*, 974 F.2d 1068, 1071 (9th Cir. 1992)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Martin*, 278 F.3d at 999. The "party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Id.* "Blanket assertions are 'extremely disfavored.'" *Id.* (quoting *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).

Though the attorney-client privilege is essential to facilitating open attorney-client communications, it is at the same time not absolute. *In re Napster, Inc.*, 4798 F.3d at 1090. Courts have imposed limits to ensure that the privilege is not used to cloak decisions and transactions in secrecy through the mere presence of an attorney. *See Matter of* Fischel, 557 F.2d 209, 212 (9th Cir. 1977). "The fact that a person is a lawyer does not make all communications with that person privileged." *U.S. v. Martin*, 278 F.3d at 999. For instance, the privilege extends only to protect the "disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Further, the communication must be between the client and his or her lawyer "for the purpose of obtaining legal advice." *U.S. v. Martin*, 278 F.3d at 100.

1    Extra scrutiny is required where in-house counsel is involved, as they often act in both a

2    legal and non-legal business capacity, and communications made in this latter capacity are not

3    privileged. *See, e.g., Oracle America, Inc. v. Google, Inc.*, 2011 WL 3794892, *4 (N.D. Cal.

4    2011); *Devlyne v. Lassen Mun. Utility Dist.*¸2011 WL 4905672 (E.D. Cal. 2011). "When

5    attempting to demonstrate than an internal communication involving in-house counsel deserves

6    privileged status, a party therefore must make a clear showing that the speaker made the

7    communication for the purpose of obtaining or providing *legal* advice." *Oracle*, 2011 WL

8    3794892 at *4 (internal citations omitted) (emphasis in original). Where legal and business

9    considerations are intertwined, courts have looked to see whether the "primary purpose" of the

10   communication related to seeking legal advice. *See, e.g.*, *North Pacifica, LLC v. City of Pacifica*,

11   274 F.Supp.2d 1118, 1128 (N.D. Cal. 2003) (citing cases). The Court finds this analysis to be

12   proper in the instant case, particularly in light of Mr. Fearn's central role in the decisions at issue

13   and the important constitutional interests at stake.  Defendants thus bear the burden to show that

14   the primary purpose of communications with and in the presence of SHA legal counsel was to

15   seek or receive legal advice rather than for administrative or business purposes.

16   Without destroying the privileged nature of communications, the district court may, in its

17   discretion, require that the withheld documents be produced for *in camera* review where the

18   party contesting the privilege shows that the intrusion is justified. *In re Grand Jury Invest.*, 974

19   F.2d at 1074-75; *see also Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992)

20   ("A district court may conduct an in camera inspection of alleged confidential communications

21   to determine whether the attorney-client privilege applies."). In order to establish justification for

22   *in camera* review, the opposing party "need only show a factual basis sufficient to support a

23

24

1    reasonable, good faith belief that *in camera* inspection may reveal evidence that information in

2    the materials is not privileged." *In re Grand Jury Invest.*, 974 F.2d at 1075.

3

4    **B. Plaintiff's Motion to Compel Production of Documents**

5            The primary dispute between the parties with respect to Plaintiff's first motion to compel

6    concerns the role in which Mr. Fearn was acting when the communications at issue were made.

7    Defendants contend that they have properly withheld or redacted only those communications that

8    occurred between Mr. Fearn, when acting in his capacity as legal counsel for SHA, and client

9    representatives for SHA or with SHA's additional legal counsel, Ms. Brosell. Plaintiff contends

10   that Mr. Fearn was instead acting in his capacity as an administrator when he made these

11   communications and that attorney-client privilege is therefore inapplicable. Further, Plaintiff

12   contends that to the extent the communications are privileged, Defendants waived any such

13   protection by placing Mr. Fearn's legal analysis and opinions at issue and selectively disclosing

14   portions of communications that are favorable to Defendants. Plaintiff also asserts that

15   Defendants have failed to show that the communications at issue were prepared because of the

16   prospect of litigation, and that the work product doctrine therefore does not apply.[1]

17           As discussed *supra*, Mr. Fearn's status as a lawyer cannot in itself operate to cloak all

18   communications with him or made in his presence in the shroud of secrecy. Were the Court to

19   endorse this outcome, it would incentivize agencies to ensure that all decisions occur in the

20   presence of counsel or run through the hands of an attorney merely to shield against discovery.

21

22   _____

23   [1] Defendants through surreply move the Court to strike new evidence submitted by Plaintiff for the first time on
     reply. Dkt. # 46. The Court agrees that submission of evidence for the first time upon reply is improper, as it unfairly
     deprives the non-movant of opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996);

24   *Schneider v. Twin City Fire Insurance Co.*, 2011 WL 5592588, * 4 (W.D. Wash. 2011). Accordingly, the Court
     grants Defendants' motion and strikes excerpts from SHA's Rule 30(b)(6) deposition, filed at Dkt. # 44.

1    The Court cannot sanction such an abuse of the discovery process and of the narrowly construed

2    attorney-client privilege. Rather, the Court must discern whether Mr. Fearn was acting within the

3    scope of his role as a professional legal advisor when the communications were made.

4    Defendants bear the burden to show that the primary purpose of these communications was legal

5    rather than administrative in order to maintain privileged status. On the basis of the vague

6    descriptors provided in Defendants' privilege log, which merely connect the documents to the

7    Nichols matter or purport "attorney mental impressions" (*see* Dkt. # Ex. 1), the Court is unable

8    to conclude that they were principally produced for a legal purpose. For instance, the documents

9    are not privileged should they evidence Mr. Fearn's mental impressions regarding administrative

10   decisions that he made with respect to Mr. Chandola, regardless of his status as an attorney,

11   though they may be privileged to the extent that they primarily contain his mental impressions

12   regarding the legality of such a decision.[2] Further, the facts underlying any such legal advice are

13   not privileged. Inspection of the documents themselves would be necessary in order to make

14   these fine-grained distinctions.

15        The Court is also unable to conclude on the basis of Defendants' privilege log that the

16   work product doctrine protects the disputed documents. In order to qualify for protection under

17   Rule 26(b)(3), the documents must be prepared (1) in anticipation of litigation or for trial, and (2)

18   by or for another party or by or for that other party's representative. *In re Grand Jury Subpoena*

19   *(Mark Torf/Torf Environ. Mgmt)*, 357 F.3d 900, 907 (9th Cir. 2003). While the documents appear

20   to be prepared for SHA, Defendants have not shown that they were prepared "because of the

21   prospect of litigation," as they must to satisfy the doctrine's first prong. *See id.* (explaining that

22   the " 'because of' standard … considers the totality of the circumstances and affords protection

23   _____

24   [2] The Court declines to reach Plaintiff's further contention that any attorney-client privilege has been waived until it determines whether the privilege maintains in the first instance.

1   when it can fairly be said that the 'document was created because of anticipated litigation, and

2   would not have been created in substantially similar form but for the prospect of that

3   litigation[.]'" (quoting *Adlman*, 134 F.3d at 1195). Here, all of the documents were produced

4   prior to the initiation of this litigation. Again, Mr. Fearn's dual role makes it impossible to assess

5   without further examination of the documents at issue whether he produced them because of the

6   prospect that Mr. Chandola might initiate litigation or instead in the course of his own

7   administrative decision-making.

8        The Court finds that Plaintiff has met his burden to produce sufficient facts to show that

9   *in camera* review of the withheld and redacted documents is justified. Despite Defendants'

10  conclusory assertions to the contrary, the timing of the communications, which were

11  contemporaneous with Mr. Chandola's decision in the Nichols matter, and its fallout within

12  SHA, support an inference that the communications pertain to Mr. Fearn's administrative

13  decisions about Plaintiff's future as a Hearing Officer. As Plaintiff points out, it is undisputed

14  that Mr. Fearn was the "motivating force behind all of the acts that Plaintiff alleges violated the

15  Constitution." Dkt. # 37, p. 5. Given that Mr. Fearn's motivations are central to claims and

16  defenses in this action, and to avoid vitiating attorney-client privilege if it does apply, the Court

17  finds *in camera* inspection of the disputed documents warranted. Accordingly, the Court defers

18  its decision on Plaintiff's Motion to Compel pending *in camera* review. In light of the advanced

19  stage of this litigation and the impending trial deadline, Defendants are ordered to produce all

20  withheld and redacted documents no later than 5pm on Thursday, September 25, 2014.

21

22  **C.  Plaintiff's Motion to Compel Deposition Answers**

23

24

Through his second motion to compel, Plaintiff moves the Court to order Defendant SHA and its designated Rule 30(b)(6) deponent, Defendant Fearn, to answer question posed at the deposition of SHA. Plaintiff contests SHA's refusal, upon instruction of counsel, to answer questions about the designation of Mr. Fearn for the Rule 30(b)(6) deposition as well as questions concerning conversations that took place at "twice monthly staff meetings" of SHA's legal department. As to the first contested subject of inquiry, the Court agrees with Defendants that aspects of the decision to designate Mr. Fearn as a Rule 30(b)(6) deponent, including the identity of the designators and their motivations, is protected by attorney-client privilege. This decision took place within the course of this litigation, entrenches on confidential communications between SHA and its legal counsel, and has indiscernible relevance to the facts underlying this case. Accordingly, the Court denies Plaintiff's request to compel SHA to answer questions regarding Mr. Fearn's designation.

As to questions regarding legal department analysis of hearing decisions, the Court finds that Plaintiff's motion to compel has greater merit. Counsel for SHA objected to all questions concerning legal department staff meeting discussions pertaining to Mr. Chandola, regardless of their timing or subject matter. For instance, SHA objected on privilege grounds when asked, "What do you recall being the first subject of concern that was raised at those meetings about Varn Chandola?" Dkt. # 51, p. 4. SHA also objected when Mr. Fearn was asked about discussions regarding the decisions of other Hearing Officers and SHA's reactions thereto. *Id.* at p. 5. The Court agrees with Plaintiff that inquiries into opinions and communications of SHA administrators acting in their administrative capacity, and contemporaneous with the underlying events in this litigation, are not privileged irrespective of these administrators' dual role as SHA legal counsel. The fact that these administrators also happen to act as SHA counsel cannot shield

1  inquiry into the central facts at issue in this case. *See Matter of Fischel*, 557 F.2d 209, 212 (9th

2  Cir. 1977) ("An attorney's involvement in, or recommendation of, a transaction does not place a

3  cloak of secrecy around all incidents of such transaction."). As one court has put in under similar

4  circumstances, "[i]t is the height of legal chutzpah to be listed as a fact witness, but then refuse

5  deposition because one is an attorney as well." *Mori v. Baroni*, 2008 WL 2509143 (N.D. Cal.

6  2008). Defendants' contention that Mr. Fearn was permitted to answer *other* questions, such as

7  those regarding Plaintiff's ability to continue hearing cases, is inapposite. Defendants have

8  offered no principled basis to show that inquiries into concerns of these administrators with Mr.

9  Chandola's decisions as a Hearing Officer, which probe the motivations behind their personnel

10  decisions, are privileged while the ultimate personnel decisions are not.

11      Plaintiff's motion to compel is accordingly granted in part. Counsel for Plaintiff may

12  inquire into conversations that took place at SHA legal department staff meetings, including as

13  they related to SHA management decisions and opinions about the decisions of Mr. Chandola

14  and other Hearing Officers, which took place prior to the initiation of this litigation. At

15  deposition, counsel for Defendants may object on the basis of attorney-client privilege only if

16  SHA can show that the dominant purpose of a conversation inquired into was to impart or

17  receive confidential legal advice rather than to make a personnel decision. In no instance are the

18  facts underlying communications with SHA attorneys and relevant to claims and defenses

19  privileged. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *Sedco. Intern., S.A. v. Cory*, 683

20  F.2d 1201, 1205 (8th Cir.), *cert. denied*, 459 U.S. 1017 (1982).  If a question calls for both

21  privileged and unprivileged information, the deponent shall provide responsive unprivileged

22  information. Defendants are cautioned that the attorney-client privilege shall be narrowly

23

24

1    construed and to avoid any further abuse of the privilege, which would necessitate further

2    discovery motions and impede the fair and efficient resolution of this action.

3

4    **D. Defendants' Motion to Compel Documents Pursuant to Subpoena**

5            Defendants' Motion to Compel seeks documents withheld by Northwest Justice Project

6    ["NJP"] Attorney Eric Dunn pursuant to Defendants' third-party subpoena served on Mr. Dunn

7    on June 30, 2014. Plaintiff included Mr. Dunn as one of seven witnesses on his Rule 26(a)(1)

8    initial disclosures, characterizing Mr. Dunn as having litigated against SHA in matters relevant

9    to this case. *See* Dkt. # 5, Ex. A, p. 2. Defendants' subpoena seeks production of all documents

10   related to Plaintiff's status as a Hearing Officer for SHA, conversations regarding Plaintiff's

11   claims against Defendants, and any conversation with Plaintiff's attorneys regarding claims

12   against SHA or any of its employees. *See Id.* at Ex. B. Mr. Dunn thereafter produced documents

13   containing his communications with Plaintiff but objected to and refused to produce documents

14   involving and regarding communications between Mr. Dunn and Plaintiff's attorneys in this

15   case. *See* Dkt. # 67, Ex. F. In written objections served on Defendants' counsel, Mr. Dunn stated:

16           "The remaining items are withheld on the grounds of attorney-client privilege
             and/or work product doctrine. The internal NJP communications [] contain
17           confidential information about NJP clients…as well as [] contain the thoughts and
             impressions of their attorneys. The communications with Mr. Chandola's counsel
18           similarly contain thoughts and impression of NJP staff or Mr. Chandola's
             attorneys, or both, and were made about subject matters in which NJP clients have
19           common interest and objectives[.]"

20   *Id.* at p. 2. Both Mr. Dunn and Plaintiff have filed briefs objecting to Defendants' motion on the

21   grounds that the withheld documents are covered by the "common interest" privilege.[3] Dkt. ##

22   _____

23   [3] Defendants have moved to strike Mr. Dunn's opposition brief and declaration as untimely filed. *See* Dkt. # 89, p. 6.
     Mr. Dunn has explained that he filed his response brief two days after the deadline due to his misinterpretation of the
24   applicable local rules. *See* Dkt. # 90. While the Court does not take lightly failure to comply with the local rules, it

1 74, 76. Plaintiff also contends that Defendants brought their motion prematurely without

2 engaging in an LCR 37(a) meet-and-confer with either Plaintiff or Mr. Dunn. Defendants, by

3 contrast, assert that the "common interest" privilege is inapposite as Mr. Dunn is not and does

4 not represent a party to this suit and further that any privilege has been waived by Mr. Dunn's

5 disclosure of documents containing communications with Plaintiff. *See* Dkt. # 66. Defendants

6 further contend that Plaintiff's objections are procedurally improper, as Plaintiff failed to timely

7 move to quash the subpoena or assert privilege. *See* Dkt. # 89, p. 2.

8        As an initial matter, the Court clarifies the applicable law governing objections to third-

9 party subpoenas duces tecum. Federal Rules of Civil Procedure 37 and 45 both provide

10 mechanisms for compelling disclosures. However, Rule 37 is inapposite here as it is "limited by

11 its terms to parties to the action" and provides a mechanism for effecting the disclosure

12 mechanisms in Rules 26 to 36. *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir.

13 1975) (finding that Rule 37 does not apply to third-party subpoena duces tecum issued under

14 Rule 45). By contrast, Rule 45 "facilitate[s] access outside the deposition procedure provided by

15 Rule 30 to documents and other information in the possession of persons who are not parties."

16 Advisory Committee Notes to 1991 Amendment. As the instant motion is made under the

17 authority provided by Rule 45(e)(2)(B)(i), Defendants are correct that it is not subject to the

18 obligation to meet and confer under Local Rule 37. *See Travelers Indem. Co. v. Metropolitan*

19 *Life Ins. Co.*, 228 F.R.D. 111, 115 (D. Conn. 2005).

20        As to Defendants' argument that Plaintiff waived objections, the responsibility to make

21 objections to a Rule 45 subpoena duces tecum belongs to the nonparty served with the subpoena.

22

23 finds that in this instance, any prejudice to Defendants is negligible, as Defendants have had an opportunity to reply
   to both Mr. Dunn's and Plaintiff's response briefs. Accordingly, and in light of its preference for resolving matters
24 on their merits, the Court denies Defendants' Motion to Strike.

1   *See* Fed. R. Civ. P. 45(d)(2)(b) ("A person commanded to produce documents…may serve on the

2   party or attorney designated in the subpoena a written objection[.]"); Fed. R. Civ. P. 45(e)(2)(A)

3   (governing non-party's objection under claim of privilege or work product doctrine); *see also*

4   *McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 384 (C.D. Cal. 2002) ("Only the nonparty can

5   prevent disclosure by objection. The party to whom the subpoenaed records pertain *cannot*

6   simply object.") (citing Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal*

7   *Civil Procedure Before Trial*, ¶ 11:422 (2002 rev.) (emphasis in original).  "The non-party

8   witness is subject to the same scope of discovery under [Rule 45] as that person would be as a

9   party to whom a request is addressed pursuant to Rule 34." Advisory Committee Notes to 1991

10  Amendment. As it is undisputed that Mr. Dunn timely served written objections to the subpoena,

11  Mr. Dunn is not obligated to produce documents until Defendants obtain an order from the Court

12  directing compliance, irrespective of Plaintiff's silence. *See Pennwalt Corp. v. Durand-Wayland,*

13  *Inc.*, 708 F.2d 492, 494.

14          On the merits of Defendants' motion, the parties principally dispute whether Mr. Dunn is

15  able to assert the common interest privilege in order to protect the withheld documents from

16  disclosure. Common interest is a long-recognized extension of the traditional common law

17  doctrine of attorney-client privilege, which was pioneered by the Ninth Circuit to protect the

18  confidentiality of communications passing from one party to the attorney for another party where

19  the parties have undertaken a joint defense effort. *See Cont'l Oil Co. v. United States*, 330 F.2d

20  347, 350 (9th Cir. 1964) (quashing subpoenas for memoranda, which were exchanged among

21  attorneys whose clients had appeared before a grand jury). Courts have extended the rule to

22  cover communications in joint meetings among clients and their respective attorneys outside

23  criminal defense situations and where litigation has not yet been commenced. *See Hunydee v.*

24

1  *United Staes*, 355 F.2d 193, 184-85 (9th Cir. 1964) (common interest privilege covers

2  discussions between clients and respective attorneys about pending indictment); *Cont'l Oil*, 330

3  F.2d at 350 (noting that "the privilege here involved is irrespective of litigation begun or

4  contemplated"). Further, an agreement to pursue a joint strategy need not be made in writing and

5  may be implied from conduct, "such as attorneys exchanging confidential communications from

6  clients who are or potentially may be codefendants or have common interest in litigation." *U.S.*

7  *v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012).

8          The critical inquiry in the Court's assessment of the common interest privilege is whether

9  a sufficient commonality of interest exists between the lawyers and clients asserting it. *In re*

10  *Imperial Corp. of Am.*, 179 F.R.D. 286, 289 (S.D. Cal. 1998). "Parties have a common interest

11  when the interest shared is similar to that 'shared by allied lawyers and clients who are working

12  together in prosecuting or defending a lawsuit or in certain other legal transactions.'" *Baden*

13  *Sports, Inc. v. Kabushiki Kaisha Molten*, 2007 WL 1185680 (W.D. Wash. 2007) (citing *United*

14  *States v. Bergonzi*, 216 F.R.D. 487, 495 (N. D. Cal. 2003)). It is not sufficient that attorneys for

15  different clients possess "a shared desire to see the same outcome in a legal matter." *In re Pacific*

16  *Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Rather, they must make the communication

17  in pursuit of a joint strategy and in accordance with a written or unwritten agreement. *Id.*

18          Here, Mr. Dunn has represented a number of voucherholders in proceedings regarding the

19  fairness and accuracy of SHA housing benefits decisions. *See* Dkt. # 77, ¶ 3. Among them, Mr.

20  Dunn represented the plaintiff Tina Hendrix in a case that led to the consent order pursuant to

21  which Mr. Chandola's position as a Hearing Officer was created and is governed. *Id.* at ¶ 4; Dkt.

22  # 13 (Amended Compl.); ¶¶ 4.11-4.12. Mr. Dunn and attorneys for Mr. Chandola assert that they

23  communicated, with the expectation of confidentiality, about litigation strategies in a joint effort

24

to ensure that Section 8 voucherholders receive a fair and unbiased revocation proceeding and to enforce the terms and objectives of the consent order. Dkt. # 77, ¶¶ 6-8. Plaintiff's original Complaint underscores the commonality of interest between Mr. Chandola and Ms. Hendrix through its assertion of third-party due process claims on behalf of Section 8 voucherholders. Dkt. # 1, Ex. A. The contract that Mr. Chandola seeks to enforce was also based on the terms of the consent order, which Ms. Hendrix retains the authority to enforce by way of a contempt proceeding. *See* Dkt. # 77, Ex. 1, ¶ 9.4. The Court thus finds that Mr. Dunn and his client share a sufficient interest with Mr. Chandola and his attorneys to bring communications regarding litigation strategy within the realm of the common interest privilege.

At the same time, Defendants rightly point out that Mr. Dunn has failed to produce a privilege log or otherwise describe in detail the nature of the withheld communications, as required by Rule 45 (e)(2)(A)(ii), in order to enable the parties and the Court to assess whether the privilege applies to each of them. Mr. Dunn's blanket assertion of common interest privilege in insufficient. Accordingly, the Court defers its ruling on Defendants' Motion to Compel pending *in camera* review of the withheld documents. Mr. Dunn shall deliver the withheld communications, together with a privilege log, to the Court for *in camera* inspection no later than 5pm on Thursday, September 25, 2014. Mr. Dunn shall also serve his privilege log on the parties to this action, in accordance with Fed. R. Civ. P. 45(e)(2)(A)(ii).

## CONCLUSION

For the above-stated reasons, the Court hereby finds and ORDERS as follows:

(1) Plaintiff's Motion to Compel Discovery (Dkt. # 37) is DEFERRED pending *in camera* review of the withheld and redacted documents. Defendants are ORDERED to produce

1    all withheld and redacted documents no later than 5pm on Thursday, September 25, 2014.

2    Plaintiff's Motion to Compel Discovery shall be RE-NOTED for consideration on

3    September 25, 2014.

4    (2) Plaintiff's Motion to Compel Deposition Answers (Dkt. # 51) is GRANTED in part as

5    provided herein. The Court denies Plaintiff's unsupported request for attorney's fees and

6    costs.

7    (3) Defendants' Motion to Compel Documents Pursuant to Subpoena (Dkt. # 66) is

8    DEFERRED pending *in camera* review of the withheld documents. Eric Dunn is

9    ORDERED to produce all withheld documents together with a privilege log for *in*

10   *camera* inspection no later than 5pm on Thursday September 25, 2014. Mr. Dunn shall

11   additionally serve his privilege log to the parties to this action, in accordance with Fed. R.

12   Civ. P. 45(e)(2)(A)(ii). Defendants' Motion to Compel shall be RE-NOTED for

13   consideration on September 25, 2014.

14   (4) Defendants' Motion to Strike (Dkt. # 46) materials submitted for the first time upon reply

15   is GRANTED. The Court disregards untimely filed materials at Dkt. # 44.

16   (5) Defendants' Motion to Strike (Dkt. # 89, p. 6) late-filed opposition brief by Mr. Dunn is

17   DENIED.

18              Dated this 19th day of September 2014.

19

20              RICARDO S. MARTINEZ

21              UNITED STATES DISTRICT JUDGE

22

23

24